UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ANTHONY WILLIAMS MILLER,

        Defendant.

_____/

Case No. 16-20222-9

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

**ORDER GRANTING MOTION TO SUPPRESS EVIDENCE [201]**

On March 7, 2017, Defendant filed a Motion to Suppress Evidence [201] seized from a search of 11697 Dwyer Street, Detroit, Michigan on June 1, 2012, per a search warrant executed by a DEA Task Force. The Government responded on March 20, 2017 [215] and Defendant replied on March 24, 2017 [226]. A hearing was held on the Motion on March 31, 2017. For the reasons stated below, Defendant's Motion to Suppress Evidence [201] is **GRANTED** and no evidence seized from the Dwyer residence can be used at trial against Defendant Anthony Miller.

**STATEMENT OF FACTS**

As described in the Affidavit in support of a search warrant of the Dwyer residence, David Powell (Powell), a Northfield Twp. Police Officer who later was assigned to a DEA task force, received information from a confidential source (CS)

on March 1, 2012 regarding the drug trafficking activities of Ronald Miller. The CS is identified in the affidavit as someone the DEA had used in the past for narcotics investigations, and who had provided information independently corroborated by Powell. The CS stated that, in 2005, she/he had distributed cocaine received from Miller. She/he further indicated that Miller's girlfriend lived at 5188 Talbot Street, and that Ronald Miller would visit that residence and sometimes distribute drugs from there. CS stated that she/he has a close friend of the Ronald Miller drug trafficking organization (DTO) who has direct knowledge that the DTO is still distributing drugs in Detroit, MI area.

Surveillance on the Talbot house began on May 8, 2012. Powell observed Ronald Miller exit the residence, open the trunk of a black Mercedes Benz (later identified as being registered to Ronald Miller's wife), obtain an unknown object, and reenter the house. Shortly after that, Powell observed a black Mazda arrive and park in front of the Talbot house. Ronald Miller exited the house, met with the person in the black Mazda (later identified as Joe Moore), and then entered the Talbot house with Moore.

About nine minutes later, Moore left the house and entered the car. After approximately seven minutes, he exited his car and re-entered the house. About nine minutes later, he left the house and drove away. Surveillance of the car was

attempted, but Moore used anti-surveillance driving tactics, which resulted in the termination of the attempted surveillance.

At about 4:32pm, Ronald Miller and Anthony Miller exited the house and entered a car registered to Anthony Miller that revealed a registered address of 11697 Dwyer St. Surveillance followed Anthony and Ronald to 5617 Casmere Street, where Ronald exited the car and entered the residence. According to the CS, there is a stash house situated on Casmere Street.  Anthony then drove to 11697 Dwyer St and entered the house. Based upon these facts, Powell, the affiant, stated in the search warrant application that he believed a narcotics transaction had occurred between Ronald Miller and Moore.

On June 1, 2012, surveillance was established at the Anthony Miller residence on 11697 Dwyer St. On that day, at around 10:30am, Powell observed Anthony Miller meet with an unknown African American male subject who arrived in a passenger vehicle. After speaking with Miller at the parked car for a short period of time, the unknown driver departed, and Anthony re-entered the house.

At about 11:05am, Powell observed a car arrive at the Dwyer residence. An unknown black man exited the car and entered the front door of the Dwyer house. About four minutes after entering the residence, the unknown man exited the residence and departed the area in the car. At approximately 11:10am, Powell

observed a black Dodge Challenger drive past the Dwyer residence twice without stopping. The license plate on the car was not registered to the Challenger.

At about 11:12am, a blue colored car stopped close to the Dwyer house, and Powell observed Ronald Miller exit the car and go to the home's porch. Next, the black Challenger arrived and parked in front of the Dwyer home. The passenger of the Challenger, later identified as Samuel Booker, met with Ronald Miller on the porch. Booker and Ronald Miller subsequently entered the Dwyer house.

At about 11:20am, Powell observed Booker exit the house and get back into the Challenger. At about 11:25am, Michigan State Police Trooper Liss conducted a traffic stop of the Challenger for improper license plates. Booker ran from the car and, after a brief pursuit, was taken into custody. Booker stated that he was on probation. He was subsequently handcuffed and searched, but the officers did not find any contraband in his possession. The trooper tracked the route Booker had taken upon his exit from the car and found what he believed to be cocaine about 50 feet from where he had exited the car. During their interviews, both the driver and Booker denied going to the Dwyer St. residence as well as any knowledge of the cocaine.

Based on the above information contained in the warrant application, on June 1, 2012, Powell applied for a search warrant to search the Dwyer St. residence. The warrant application was approved by a 19th District Court Judge

and the search was executed on the same day, yielding evidence of guns, crack cocaine, a scale with suspected crack residue, drug paraphernalia and residency documents in Defendant's name.

**ANALYSIS**

**1. PROBABLE CAUSE DID NOT EXIST TO SEARCH THE HOUSE**

The Fourth Amendment requires that reasonable searches and seizures must be supported by warrants issued upon probable cause, "supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To show probable cause, the officer applying for the search warrant must submit an affidavit that contains "facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Crumption*, 824 F. 3d 593, 615 (6th Cir. 2016) (internal citations omitted). The requirement that the warrant show a "fair probability that evidence of a crime will be located on the premises of the proposed search" stands for the proposition that an affidavit must adequately describe a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F. 3d 591, 594 (6th Cir. 2004) (internal quotations omitted). It is not enough that the owner of the house is suspected of a crime. *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006).

Hearsay evidence presented by a confidential informant may be considered, but the Magistrate must consider "the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003).

When reviewing the sufficiency of a warrant application, District Courts are to afford the issuing Magistrate's probable cause determination "great deference." *United States v. Allen*, 211 F. 3d 970, 973 (6th Cir. 2000) (internal citation omitted.). The District Court is limited to the four corners of the affidavit when reviewing the sufficiency of evidence supporting the probable cause determination. *United States v. Berry*, 565 F. 3d 332, 338 (6th Cir. 2009).

### a. CONFIDENTIAL SOURCE

Defendant argues that the CS lacked veracity, reliability and credibility, and that therefore the statements do not support a finding of probable cause to search the 11697 Dwyer St. residence. The Court agrees.

First, the veracity of the CS is not adequately established. The Affidavit fails to show why the affiant concluded that the unnamed informant was credible, and the information supplied was reliable. In this case, the CS is presented as "been utilized in the past for DEA narcotics investigations and has provided information that has been independently corroborated by [the] Affiant." [201-1]. There is no

description of the information previously provided by the CS, whether this information returned any convictions or seizure of evidence, or the number of times that the CS had provided the DEA with reliable information. These factors all run against a finding that the CS was reliable given the vague assertions contained the Affidavit. *United States v. Smith*, 182 F.3d 473, 480 (6th Cir. 1999).

Secondly, the basis of knowledge for the CS' statements contained in the affidavit is not sufficient. The CS' firsthand knowledge of Ronald Miller's DTO dates from his/her activities distributing cocaine for Ronald Miller in 2005. This is seven years prior to the time that he/she gave information to the affiant. There is no indication in the affidavit that the CS had any recent information to support a statement that Ronald Miller was a multi-kilogram distributor of cocaine in 2012. The only information provided by the CS to support a belief that Ronald Miller's DTO was still distributing drugs in the Detroit, Michigan area is from a "close friend of the Ronald Miller DTO that has direct knowledge." While hearsay information may be relied on by a Magistrate if the confidential informant has a prior track record of credibility, given the sketchy credibility of the CS as shown within the four walls of the affidavit, it is doubtful that a Magistrate could rely on this information to support a probable cause finding for a search on the Dwyer Residence. *Smith*, 182 F.3d at 483.

### b. SURVEILLANCE DONE BY AFFIANT AND AFFIANT'S TEAM DOES NOT SUPPORT PROBABLE CAUSE TO SEARCH THE DWYER RESIDENCE

The Affidavit contains details of the surveillance of Ronald Miller at 5188 Talbot Street on May 8, 2012 that led to the surveillance of the Dwyer residence on June 1, 2012. Defendant argues that there is nothing contained within the four walls of the affidavit that could possibly support probable cause to search the Dwyer residence. The Court agrees.

First, the Affidavit identifies the Dwyer residence as the residence of Defendant Anthony Miller. There is no information from the CS that links Anthony Miller to Ronald Miller's DTO, and the affidavit does not once allege that Anthony Miller or his residence was involved in any suspected drug trafficking activities. Specifically, the Affidavit states that Ronald Miller and Moore were believed to have engaged in a narcotics transaction on May 8, 2012, based on the Affiant's knowledge and expertise; but Anthony Miller is never similarly implicated in the Affidavit.

Additionally, while Anthony Miller drove Ronald Miller to an alleged stash house on Casmere Street,[1] the Defendant did not enter the house, merely dropping Ronald Miller off at the house and then driving to his residence on Dwyer Street. The Court does not agree with the Government's argument that Anthony Miller is

---

[1] The specific address was not identified as a stash house, but the CS indicated that there was a stash house located on Casmere Street.

tied to the stash house by his actions on May 8, 2012. Per the Affidavit, Defendant merely dropped someone off at an alleged stash house. He did not exit the vehicle, receive anything from inside the house, converse with anyone from inside the house, or remain parked outside the house for an extended amount of time. There is nothing in the Affidavit to connect Anthony Miller directly to this alleged stash house. Therefore, the surveillance prior to June 1, 2012 does not establish any probable cause to search Anthony Miller's residence on Dwyer Street, since he is not implicated within the four corners of the Affidavit as being a suspected participant in the DTO, or involved in any alleged narcotic activities based on the surveillance conducted on May 8, 2012.

As to the surveillance of Defendant Anthony Miller's house on June 1, 2012, the Government first argues that circling the residence by the Challenger, then returning and remaining at the residence for a short period of time before departing is consistent with the sale of narcotics. However, there is nothing contained within the four corners of the Affidavit that states this proposition for the Magistrate to rely for a probable cause determination.

The Government argues, the fact that Booker, the passenger of the Challenger, had cocaine found near him during a traffic stop shortly after he exited the Dwyer residence is sufficient to establish a nexus between the Dwyer residence and the evidence sought, i.e. evidence of a DTO. However, there is nothing in the

Affidavit to tie the bag of cocaine to the Dwyer residence. There were no suspicious movements observed between Booker and Anthony Miller or Ronald Miller outside of the Dwyer residence. The Affidavit fails to establish that the activities of any of the people seen at the Dwyer residence that day were indicative of narcotic trafficking. Rather, a small amount of cocaine was found on a person who exited the Dwyer residence. There is nothing in the affidavit to even suggest that the cocaine was obtained from inside the house. The mere fact that people with a criminal past were inside of a residence does not support anything more than an inference that evidence of drug trafficking would be found inside the house. The facts found in the affidavit do not show a "fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Carpenter*, 360 F. 3d 591, 594 (6th Cir. 2004) (internal quotations omitted). Therefore, a nexus has not been established between the Dwyer residence and the evidence sought.

Finally, at the hearing, the Government argued that the presence of Ronald Miller at the Dwyer residence also contributed to probable cause that the Dwyer residence was involved in drug trafficking. However, once again there is nothing contained in the Affidavit suggesting  that Ronald Miller's presence at the house that day supported a probable cause finding that the house would contain evidence of drug trafficking. The Affidavit does not attempt to link Ronald Miller to the

Dwyer residence, other than by his presence there on June 1, 2012, and there is no evidence presented in the Affidavit that alleges that any of Ronald Miller's actions at the Dwyer residence on June 1, 2012 were suspicious or indicative of drug dealing.

Therefore, based on the above analysis, while the Court affords the issuing Magistrate's probable cause determination "great deference," the information contained within the four corners of the Affidavit does not support a probable cause finding that would support a warrant permitting the DEA to search the Dwyer residence to uncover evidence of drug trafficking. *United States v. Allen*, 211 F. 3d 970, 973 (6th Cir. 2000) (internal citation omitted.).

## 2. GOOD FAITH EXCEPTION

A finding of no probable cause does "not bar the government's introduction of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir.2005). Under the good faith exception, the inquiry is limited "to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Leon*, 468 U.S. 897, 922–23, n. 23, 104 S.Ct. 3405. (1984).

This good faith reliance cannot be relied on by an officer when: (1) the warrant's affidavit contains "knowing or reckless falsity;" (2) the magistrate "wholly abandoned" their judicial role; (3) "the affidavit is so lacking in probable cause as to render official belief in its existence entirely unreasonable;" or (4) "where the officer's reliance on the warrant was neither in good faith nor objectively reasonable" *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005), citing *Leon*, 468 U.S. at 923 (internal quotations omitted).

The third limitation prevents the submission of evidence if an affidavit is bare bones, i.e. an affidavit "that merely states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *McPhearson*, 469 F.3d at 526 (internal citations omitted). For Leon to apply in this case, the affidavit must contain:

> a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause.

*United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004).

Defendant argues that the good faith exception does not apply because the warrant was bare bones. The Court agrees with the Defendant on this characterization. While the Government contends that the Affidavit contains a plethora of information from surveillance and CS information, this is not sufficient with respect to the Defendant. The information relating to Anthony Miller and his

Dwyer residence is very sparse and contains mere "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996). Objectively looking to the Affidavit, there are no facts presented to link the Dwyer residence to any reasonable belief that evidence of drug trafficking would be found inside. As an Officer trained and skilled in drug trafficking investigations, the Affiant had the knowledge to describe when certain acts were common to drug trafficking behavior. In fact, the Affiant did state that very assertion regarding Ronald Miller and Moore's actions at the 5188 Talbot Street on May 8, 2012. However, as to the Dwyer residence, there are no facts presented to support a reasonable officer's belief that the Affidavit supported probable cause to search. There are no facts to connect the Ronald Miller DTO and Anthony Miller or his residence. The Affidavit does not describe any criminal conduct or even suspected criminal conduct that took place inside of the Dwyer residence, or by Anthony Miller himself. The Affidavit does not provide strong reason to believe that the CS is reliable, truthful or credible, and the Affidavit does not link the cocaine found near Booker to the Dwyer residence. Therefore, the good faith exception does not apply.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Suppress Evidence [201] is

**GRANTED**. All evidence seized from 11697 Dwyer Street, Detroit, Michigan on

June 1, 2012 cannot be used as evidence at trial against Defendant Anthony Miller.

**SO ORDERED**.


                                        s/Arthur J. Tarnow
                                        Arthur J. Tarnow
Dated: April 7, 2017                    Senior United States District Judge